*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1625**

State of Minnesota,
Respondent,

vs.

Ronald Clark, Jr.,
Appellant.

**Filed December 21, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-13-28418

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Renée J. Bergeron, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Halbrooks, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Ronald Clark Jr. appeals his convictions for first-degree sale and second-degree possession of a controlled substance, arguing that he established the

entrapment defense by a fair preponderance of the evidence and that the state failed to prove beyond a reasonable doubt that he was predisposed to commit the charged offenses. Because we conclude that the state's evidence was sufficient to establish Clark's predisposition to commit the offenses, we affirm his convictions.

**FACTS**

This case arises from a controlled-substance buy-bust[1] transaction when appellant, Ronald Clark, Jr., sold two ounces of methamphetamine to a confidential informant, M.P. Viewing the evidence in the light most favorable to the guilty verdict, as we must, we assume the jury believed the following account of the events and disbelieved any contrary evidence. *See State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999).

At the time of the buy-bust transaction, informant M.P. faced criminal charges for first-degree possession of a controlled substance, third-degree possession of a controlled substance, and possession of a pistol or assault weapon related to a March 2011 arrest. Upon advice from his attorney, M.P. agreed to work with police as a confidential informant to secure the arrest and conviction of other controlled-substance offenders. M.P. knew Clark through a mutual cousin and from previous drug deals.

In August 2013, M.P. contacted Clark seeking to buy cocaine. M.P. testified that Clark responded that he did not have any cocaine, but that he had "that stuff that white

---

[1] "Buy bust" is a law enforcement term referring to transactions in which police intend to arrest an offender immediately after he or she completes an arranged controlled-substance sale to a police informant.

2

people like," which M.P. understood as either methamphetamine or "plant food."[2]  They called and texted back and forth three or four times.

Clark testified that he told M.P. that he no longer sold drugs, he had a job, and he was currently at work.  Clark stated that M.P referred to him as "Cuz" while attempting to persuade him to sell.  Clark ultimately acquiesced to M.P.'s request, he testified, because he considered M.P. family.

Clark agreed to sell M.P. two ounces of methamphetamine for $3,000, and they arranged to meet in a Bloomington hotel parking lot.  Before completing the deal, Clark texted M.P. a picture of the intended product.  M.P. then told police that he knew someone by the name of "Dawg," from whom he could buy methamphetamine that same day.

After ensuring that M.P. had no contraband or cash in his possession, the officers supplied him with $3,000 in marked bills, accompanied him to the sale, and conducted surveillance from a short distance away.  Once the sale was complete, the officers immediately arrested Clark and searched him and his car.  They confirmed that Clark had the $3,000 in marked bills from executing the sale.  They also recovered an additional ounce of methamphetamine from a purse in Clark's car, which Clark claimed was his.  Clark admitted to selling and possessing methamphetamine in a recorded interview on the scene.

---

[2]  "Plant food" is an illegal synthetic cathinone used as an alternative to illicit stimulants like MDMA, LSD, cocaine, and methamphetamine.  Drug Enforcement Agency, Department of Justice, Notice of Intent: Temporary Placement of Three Synthetic Cathinones Into Schedule I (Sept. 8, 2011), http://www.deadiversion.usdoj.gov/fed_regs/rules/2011/fr0908.htm.

Based on the sale and the results of the search of Clark's car, the state charged Clark with first-degree sale of a controlled substance and second-degree possession of a controlled substance. *See* Minn. Stat. §§ 152.021, subd. 1(1), .022, subd. 2(a)(1) (2014). Before trial, Clark filed a notice of intent to assert the affirmative defense of entrapment.

At trial in May 2014, M.P., four police officers, a forensic scientist, and Clark testified. Following their testimony, the district court found that Clark had established that he was induced to commit the offense by a fair preponderance of the evidence. To meet its burden of proving that Clark was predisposed to commit the offense, the state then introduced testimony establishing Clark's two prior controlled-substance convictions: an October 2004 conviction for first-degree possession of cocaine and an August 2006 conviction for third-degree sale of marijuana. The district court instructed the jury on entrapment along with the charged offenses.

The jury convicted Clark of both counts, and the district court sentenced Clark to 104 months. Clark appeals.

## DECISION

To raise the entrapment defense, a criminal defendant must first show by a preponderance of the evidence "that the government induced the commission of the crime." *State v. Vaughn*, 361 N.W.2d 54, 57 (Minn. 1985). Inducement requires a showing that "the state did something more than merely solicit the commission of a crime." *State v. Olkon*, 299 N.W.2d 89, 107 (Minn. 1980). Rather, the state must have persuaded, badgered, or pressured the defendant to commit a crime. *Id.* Here, the

4

district court found that Clark had established inducement by a fair preponderance of the evidence.

Once a defendant shows inducement, the state must then prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged. *State v. Grilli,* 304 Minn. 80, 96, 230 N.W.2d 445, 456 (1975). Specifically, the state must prove that the defendant was predisposed to commit the crime before being approached by government agents. *State v. Johnson*, 511 N.W.2d 753, 755 (Minn. App. 1994), *review denied* (Minn. Apr. 19, 1994).

Predisposition may be shown by evidence of (1) the defendant's "active solicitation to commit the crime," (2) "prior criminal convictions," (3) "prior criminal activity not resulting in conviction," (4) the "defendant's criminal reputation," or (5) "by any other adequate means." *Grilli,* 304 Minn. at 89, 230 N.W.2d at 452. A defendant's ready response to the government's solicitation of the crime satisfies the "other adequate means" basis for predisposition. *Olkon*, 299 N.W.2d at 108. When the state's evidence establishes a defendant's predisposition, "the challenged conduct of the state's officers is mitigated or excused, and the defense of entrapment is not proved." *Id.* (quotation omitted).

On a claim of insufficient evidence, this court examines the evidence in the light most favorable to the conviction to determine if it would permit a jury to reasonably conclude that the defendant was guilty of the offense. *State v. Nelson*, 812 N.W.2d 184, 187 (Minn. App. 2012). "[I]t is the province of the jury to determine the credibility and weight to be given to the testimony of any individual witness." *State v. Engholm*, 290

5

N.W.2d 780, 784 (Minn. 1980). This court assumes "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Clark argues that the evidence was insufficient to sustain his convictions. He contends that the State failed to prove beyond a reasonable doubt that he was predisposed to commit a controlled-substance crime because it produced no evidence that he was otherwise involved in drug activity in 2013 and it relied on his six- and nine-year-old prior convictions.[3] We disagree.

First, the state properly introduced Clark's two prior convictions for similar drug-related activity. *See Grilli*, 304 Minn. at 89, 230 N.W.2d at 452. The district court ruled Clark's convictions admissible in a pre-trial hearing in which it heard meaningful arguments from both parties. Clark does not contest their admissibility.

Next, M.P.'s testimony, which we assume the jury believed, established Clark's ready response to the government's solicitation. *See Olkon*, 299 N.W.2d at 108. M.P. testified that when he initially contacted Clark to purchase cocaine, Clark responded that, although he could not get cocaine, he *could* get a different drug. Clark and M.P. readily

---

[3] Clark frames the issue as one of first impression: whether evidence of past convictions, absent other evidence of ready willingness to commit the crime, is sufficient to establish a defendant's predisposition. He correctly asserts that this court has held that a finding of predisposition cannot rely on a twenty-year-old conviction alone. *Johnson*, 511 N.W.2d at 755 ("Otherwise, anyone ever involved with drugs would—for entrapment purposes—be forever 'predisposed' to sell drugs.") Though Minnesota precedent does not address the sufficiency question that Clark raises, we need not reach it given the remaining evidence that establishes Clark's predisposition.

exchanged calls and text messages; it was not a one-sided conversation. Clark texted M.P. a picture of the methamphetamine before completing the sale, showing that he had ready access to large quantities of methamphetamine. And Clark produced the methamphetamine shortly after M.P. requested it.

Finally, despite Clark's testimony that he had been sober since 2007, and no longer dealt cocaine, he retained an entire ounce of methamphetamine from the sale, which the police found in a purse in his car after his arrest. This additional ounce of methamphetamine resulted in the second-degree possession charge.

This evidence, considered in its entirety, is sufficient to establish that Clark was predisposed to commit the offense before being solicited to sell drugs. Accordingly, Clark did not prove the defense of entrapment, and the jury properly convicted him of both charges.

**Affirmed.**